J-S31015-23

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| JOHNNY A. BROWN | : | |
| | : | |
| Appellant | : | No. 238 EDA 2023 |

Appeal from the Judgment of Sentence Entered December 27, 2022
In the Court of Common Pleas of Philadelphia County Criminal Division at
No(s): CP-51-CR-0010316-2008

BEFORE: OLSON, J., STABILE, J., and McLAUGHLIN, J.

MEMORANDUM BY OLSON, J.: **FILED OCTOBER 05, 2023**

Appellant, Johnny A. Brown, appeals from the judgment of sentence entered December 27, 2022. In this direct appeal from resentencing, Appellant's counsel filed both a petition for leave to withdraw as counsel and an accompanying brief pursuant to ***Anders v. California***, 386 U.S. 738 (1967) and ***Commonwealth v. Santiago***, 978 A.2d 349 (Pa. 2009). We conclude that Appellant's counsel complied with the procedural requirements necessary to withdraw. Moreover, after independently reviewing the record, we conclude that the instant appeal is wholly frivolous. Therefore, we grant counsel's petition for leave to withdraw and affirm Appellant's judgment of sentence.

On a previous appeal, a panel of this Court summarized the relevant factual and procedural history of this case as follows.

This case arises from the December 2007 robbery and fatal shooting of thrift store owner Anthony D'Antonio (D'Antonio) by [Appellant] and co-defendant Shawn K. Williams (Williams). [Appellant] was [16-years-old] at the time of the shooting. [Appellant] was charged with second-degree murder, robbery, criminal conspiracy and possession of an instrument of a crime (PIC). [A joint trial was held] on February 22, 2010, which bore out the following testimony.

On December 11, 2007, at approximately 1:40 p.m., Philadelphia Police Officer Adrian Truitt responded to the scene of the shooting. D'Antonio had suffered two bullet wounds to the head and was pronounced dead [at the scene]. Officer Truitt recovered one fired cartridge casing from the floor. Multiple eyewitnesses placed [Appellant] and Williams in very close proximity to the store just prior to and immediately after the shooting.

Gloria Walker testified that she was outside of her house with her mother and two sisters when she saw [Appellant] sitting across the street on a doorstep with a man later identified as Williams. She called [Appellant] over and he approached wearing a black hoodie and a scarf over his face. Walker told [Appellant] that he could get in trouble looking like that and he responded: "Not [with] what I got on me." [Appellant] lifted up his shirt to show a gun and told her he was about to go around the corner. Walker, her mother and her two sisters left to go shopping and returned quickly upon learning that D'Antonio had been shot. When Walker saw [Appellant], he was wearing a completely different outfit and no coat. Walker's mother, also named Gloria Walker, corroborated her daughter's observations and added she heard [Appellant] say: "I'm going around the corner to handle my business." Wynette Walker substantiated their account and further stated that she used to see [Appellant] on the block every day, but that after the shooting, she never saw him on the block again. Palmetta Walker testified consistent with her family members and she identified Williams as the man sitting on the stairs with [Appellant].

Neighbor Nathaniel Gay testified that he looked outside of a window at his home shortly before the shooting and observed [Appellant] and another man sitting on a step. [Appellant] was dressed in black clothing and was loading a semi-automatic firearm. Gay briefly turned away from the window and when

he returned to it the men were gone. Gay heard gunshots shortly thereafter.

Christopher Howard testified as a reluctant witness verbatim from his prior statement to police that [Appellant] offered to sell him a black .380 caliber handgun on the evening of the shooting for $250.00. Police Officer Edward Nelson, an expert in the field of firearms identification and ballistics, examined the two bullets removed from the victim and the single cartridge casing recovered from the store. He concluded that the two bullets were .380 caliber and were fired from the same gun. He further testified that although it is impossible to match a fired cartridge casing with any fired bullet, the casing from the store was also a .380 caliber.

[Appellant's] defense at trial was that the Walker family fabricated their testimony as retaliation for an August 2007 incident involving a neighborhood melee. On rebuttal, the Commonwealth introduced a statement [Appellant] made to Detective John Cummings after his arrest in which he admitted that he and Williams had attempted to rob the thrift store. [Appellant] asserted that he ran away when Williams pulled out a gun.

At the conclusion of trial, the jury found [Appellant] guilty of the above-listed offenses. On May 24, 2010, the trial court sentenced [Appellant] to a [mandatory] term of life imprisonment [without parole] on the second-degree murder conviction; a concurrent term of not less than [10] nor more than [20] years' incarceration for robbery; a consecutive term of not less than [10] nor more than [20] years' incarceration for criminal conspiracy; and a concurrent term of not less than one nor more than two years' imprisonment for PIC.

[Appellant] filed a direct appeal in which he challenged the sufficiency of the evidence supporting the jury's verdict. [] *See Commonwealth v. Brown*, 48 A.3d 470, at *8 (Pa. Super. 2012)[.] This Court affirmed [Appellant's] convictions on April 9, 2012, and vacated his sentence for robbery only, as it merged with second-degree murder for sentencing purposes.

\*\*\*

- 3 -

On July 30, 2013, [Appellant] filed [a] timely PCRA petition advancing a claim of ineffectiveness for trial counsel's failure to move for a directed verdict, a demurrer[,] or a binding instruction at the close of the Commonwealth's case because no evidence was presented during the prosecution's case that he participated in the robbery or murder. On March 8, 2016, [Appellant] filed an amended [PCRA] petition challenging the legality of his [mandatory] life sentence in light of the United States Supreme Court's decisions in *Miller v. Alabama*, 567 U.S. 460 (2012) and *Montgomery v. Louisiana*, 136 S. Ct. 718 (2016), prohibiting life [sentences] in prison without parole [] for juvenile homicide offenders absent consideration of their special circumstances in light of the purposes of juvenile sentencing and providing that this construct applies retroactively.

On October 3, 2019, the PCRA court issued notice of its intent to dispose of [Appellant's] petition without further proceedings. *See* Pa.R.Crim.P. 907(1). On October 11, 2019, the PCRA court entered its order providing relief on [Appellant's] *Miller* claim, but rejecting his ineffectiveness claim. [The PCRA court also indicated that its October 3, 2019 was issued in error. Appellant] timely appealed[.]

*Commonwealth v. Brown*, 2021 WL 387661 *1, *1-*3 (Pa. Super. 2021), *appeal denied*, 261 A.3d 379 (Pa. 2021) (most internal citations and all footnotes omitted). On February 3, 2021, this Court affirmed the PCRA court's October 11, 2019 order rejecting Appellant's claims of ineffective assistance of trial counsel but allowing resentencing pursuant to Appellant's *Miller* claim. *Id*. Our Supreme Court subsequently denied Appellant's petition for allowance of appeal on August 17, 2021. *Commonwealth v. Brown*, 261 A.3d 379 (Pa. 2021).

Thereafter, a resentencing hearing was conducted on December 27, 2022. That day, the court sentenced Appellant "to [22] and one-half years' incarceration to life for second degree murder with a concurrent [10] to [20]

- 4 -

years['incarceration] for conspiracy and one to two years concurrent for [PIC]." Trial Court Opinion, 2/23/23, at 2. This timely appeal followed.

On appeal, Appellant's counsel filed a petition for leave to withdraw and counsel accompanied this petition with an *Anders* brief. Before reviewing the merits of this appeal, this Court must first determine whether counsel fulfilled the necessary procedural requirements for withdrawing as counsel. *Commonwealth v. Miller*, 715 A.2d 1203, 1207 (Pa. Super. 1998).

To withdraw under *Anders*, counsel must satisfy certain technical requirements. First, counsel must "petition the court for leave to withdraw stating that, after making a conscientious examination of the record, counsel has determined that the appeal would be frivolous." *Miller*, 715 A.2d at 1207. Second, counsel must file an *Anders* brief, in which counsel:

> (1) provide[s] a summary of the procedural history and facts, with citations to the record; (2) refer[s] to anything in the record that counsel believes arguably supports the appeal; (3) set[s] forth counsel's conclusion that the appeal is frivolous; and (4) state[s] counsel's reasons for concluding that the appeal is frivolous. Counsel should articulate the relevant facts of record, controlling case law, and/or statutes on point that have led to the conclusion that the appeal is frivolous.

*Santiago*, 978 A.2d at 361. Finally, counsel must furnish a copy of the *Anders* petition and brief to his or her client and advise the client "of [the client's] right to retain new counsel, proceed *pro se* or raise any additional points worthy of this Court's attention." *Commonwealth v. Woods*, 939 A.2d 896, 898 (Pa. Super. 2007).

If counsel meets all of the above obligations, "it then becomes the responsibility of the reviewing court to make a full examination of the proceedings and make an independent judgment to decide whether the appeal is in fact wholly frivolous." **Santiago**, 978 A.2d at 355 n.5 (citation omitted); **see also Commonwealth v. Yorgey**, 188 A.3d 1190, 1197 (Pa. Super. 2018) (*en banc*) (holding that the **Anders** procedure requires this Court to review "the entire record with consideration first of the issues raised by counsel. ... [T]his review does not require this Court to act as counsel or otherwise advocate on behalf of a party. Rather, it requires us only to conduct a review of the record to ascertain if[,] on its face, there are non-frivolous issues that counsel, intentionally or not, missed or misstated. We need not analyze those issues of arguable merit; just identify them, deny the motion to withdraw, and order counsel to analyze them"). It is only when all of the procedural and substantive requirements are satisfied that counsel will be permitted to withdraw.

In the case at bar, counsel complied with all of the above procedural obligations. We must, therefore, review the entire record and analyze whether this appeal is, in fact, wholly frivolous. Our analysis begins with the claim raised in the **Anders** brief, which is as follows:

> Whether there is anything that might arguably support the appeal that obviates a conclusion that the appeal is frivolous?

Appellant's Brief at 6. In support of the foregoing question, Appellant raises two potential issues:

> 1. Whether Appellant's sentence of 22 and one-half years' incarceration is excessive in light of mitigating factors, including Appellant's expression of remorse and reform?
>
> 2. Whether the trial court issued an illegal sentence?

***See generally id.*** at 6 and 16.

We first address Appellant's challenge to the discretionary aspects of his sentence. Upon review, we conclude that this issue is waived as Appellant did not lodge such a challenge at sentencing or in a post-sentence motion. ***See*** Pa.R.Crim.P. 720; ***see also Commonwealth v. Cook***, 941 A.2d 7, 11 (Pa. Super. 2007) (explaining that an appellant must properly preserve a challenge to the discretionary aspects of his sentence by filing a motion to reconsider and modify sentence). Therefore, we conclude that, because Appellant waived his claim, "pursing th[e] matter on direct appeal is frivolous." ***Commonwealth v. Kalichak***, 943 A.2d 285, 291 (Pa. Super. 2008).

We next address Appellant's challenge to the legality of his sentence.[1] This Court has stated:

> Issues relating to the legality of a sentence are questions of law. When the legality of a sentence is at issue, our standard of

---

[1] In general, issues not properly raised and preserved before the trial court "are waived and cannot be raised for the first time on appeal." Pa.R.A.P. 302(a). "A challenge that implicates the legality of an appellant's sentence, however, is an exception to this issue preservation requirement." ***Commonwealth v. Thorne***, 276 A.3d 1192, 1196 (Pa. 2022) (citations omitted). "Stated succinctly, an appellate court can address an appellant's challenge to the legality of his sentence even if that issue was not preserved in the trial court; indeed, an appellate court may [even] raise and address such an issue *sua sponte*." ***Id.*** (citation omitted). Hence, Appellant's failure to challenge the legality of his sentence before the trial court would not preclude our review of this issue.

review over such questions is *de novo* and our scope of review is plenary. If no statutory authorization exists for a particular sentence, that sentence is illegal and subject to correction. An illegal sentence must be vacated.

***Commonwealth v. Ramos***, 197 A.3d 766, 768–769 (Pa. Super. 2018). (internal citations, quotations, and ellipses omitted).

It is now well settled in Pennsylvania courts that juvenile defendants convicted of second-degree murder before 2012 (and for whom mandatory sentences of life without parole are inappropriate) are subject to mandatory maximum sentences of life imprisonment accompanied by a minimum term of years to be determined by the trial court. ***See Commonwealth v. Olds***, 192 A.3d 1188, 1195 (Pa. Super. 2018) ("juveniles convicted of second-degree murder prior to June 25, 2012 . . . must be sentenced to a maximum period of life imprisonment; however, they are eligible for parole after a term-of-years specified by the trial court"). In line with the aforementioned precedent, the trial court herein sentenced Appellant to a minimum term of 22 and one-half years' imprisonment and a maximum term of life imprisonment.[2] Hence, we agree that any challenge to the legality of Appellant's sentence is baseless.

_____

[2] The court also correctly noted that, had Appellant's conviction occurred after 2012, "the mandatory minimum sentence would have been at least [30] years to life." Trial Court Opinion, 2/23/23, at 6; ***see also*** 18 Pa.C.S.A. § 1102.1(c) (explaining that, if a person is convicted of murder in the second degree after June 24, 2012 and is at least 15-years-old at the time of the offense, he or she "shall be sentenced to a term of imprisonment the minimum of which shall be at least 30 years to life").

We have independently considered the issues raised within counsel's *Anders* brief and we have determined that the claims are frivolous. In addition, after an independent review of the entire record, we see nothing that might arguably support this appeal. The appeal is, therefore, wholly frivolous. Accordingly, we affirm Appellant's judgment of sentence and grant counsel's petition for leave to withdraw.

Petition for leave to withdraw appearance granted. Judgment of sentence affirmed. Jurisdiction relinquished.

Judgment Entered.

Benjamin D. Kohler, Esq.
Prothonotary

Date: 10/5/2023